United States Bankruptcy Court
Southern District of Texas
FILED

FEB 22 2005

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEE BUMPERS,<br>Plaintiff | S<br>S<br>S | |
| | S | CA NO.: H- H-05-0577 |
| | S | (Jury) |
| HARRIS COUNTY, TEXAS,<br>Defendant | S<br>S | |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, LEE BUMPERS, Plaintiff, and complains of HARRIS COUNTY, TEXAS, Defendant, as follows:

I.

JURISDICTION

1. This court has jurisdiction over the subject matter of this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000e et seq.

II.

PARTIES

2. Plaintiff Lee Bumpers is an individual residing in Harris County, Texas.

3. Defendant Harris County, Texas is a political subdivision of the State of Texas which may be served with process through its County Judge, Robert A. Eckels, at 1001 Preston, Houston, Texas 77002, and, through its County Attorney, Michael Stafford, at 1019 Congress, 15th Floor, Houston, Texas 77002.

4. Defendant Harris County, Texas has employed at least fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year and, therefore, is an "employer" within the meaning of 42 U.S.C. Section 2000e(b).

III.

VENUE

5. Venue of this action is proper in this judicial district because the parties to this lawsuit reside or transact business in this judicial district; the actions, events, and developments which have given rise to the causes of action sued upon occurred in this judicial district; and the causes of action sued upon accrued in this judicial district.

IV.

FACTS

6. Defendant hired the Plaintiff on February 18, 1991 as a jailer with the Harris County Sheriff's Department, and in January 1993 he became a sworn sheriff's deputy. Around July 1997 Plaintiff moved to the Defendant's Patrol Bureau at District III and was stationed at Defendant's Wallisville Road substation. Prior to that time all of Plaintiff's performance evaluations were above average.

7. Plaintiff is Black.

8. Once Plaintiff relocated to the Walisville substation Defendant began to discriminate against him and to subject him to a hostile work environment because of his race. Specifically, Plaintiff's performance evaluations began to suffer, and Defendant assigned him an office deputy position in January 1998.

9. At all times relevant to this lawsuit Plaintiff reported to the Sergeant who in turn reported to the Lieutenant. The Lieutenant in turn reported to the Captain who in turn reported to the Major. The Major reported to the Chief Deputy and the Chief Deputy reported to the Sheriff. At all times relevant to this lawsuit the Harris County Sheriff was Tommy Thomas.

10. Plaintiff expressed to the Defendant his disapproval of the change in the terms and conditions of his employment. However, Lieutenant Gerald Warren, White, told the Plaintiff that he would have to either accept the transfer or he would be

involuntarily transferred to a different position with a disciplinary action. Plaintiff advised Lieutenant Warren that he did not wish to return to the jailer position after having been promoted to the Patrol Bureau. Lieutenant Warren told the Plaintiff he did not want the Plaintiff in District III.

11. Plaintiff remained in the Patrol Bureau position at the substation until the end of March 2000 when Lieutenant Warren and Major Sturgis involuntarily transferred him to the 701 San Jacinto Jail in Harris County, working the night shift. Defendant took this disciplinary action against the Plaintiff, an adverse employment action, because of his race, Black.

12. Plaintiff appealed the adverse transfer and Defendant's Civil Service Commission determined that Plaintiff's suspension and transfer were unwarranted. It also ordered Plaintiff's reinstatement in his prior position in the Patrol Bureau. Defendant complied with that order.

13. However, the real reason for Plaintiff's suspension and involuntary transfer was his race and opposition to racism in the work place. Plaintiff was subjected to racism and a hostile work environment on a continuous basis.

14. Around the middle of 1999 Sergeant Kaiser, White, called the Plaintiff a "monkey" in the presence of Lieutenant Warren and in a room full of white deputies. No disciplinary action was taken against Sergeant Kaiser and no prompt action designed to remedy racism or prevent racism in the work place was attempted.

15. On October 22, 1999 Deputy Larry Sewarde, White, remarked to the Plaintiff, again in the presence of Lieutenant Warren, that "a monkey can do your [Plaintiff's] job." At that time Plaintiff was the only Black male employed at the Wallisville substation. Plaintiff viewed that incident as a racist incident which humiliated him greatly.

16. Although Lieutenant Warren witnessed this incident he did not take any

prompt or effective remedial action.

17. Consequently, on October 23, 1999 Plaintiff received an e-mail depicting a monkey walking in a tree scratching its rear, then smelling its hand, and then falling out of the tree.

18. On a different occasion Lieutenant O'Brien called the Plaintiff a "brownie." Plaintiff complained about him in writing to Captain Nixon. However, no remedial action was taken.

19. In January 2000 a White deputy advertised on the substation's bulletin board that he was selling "all white" pit-bull puppies with "good bloodliness" whose parents' names were "Aryan" and "White Lightening." This racist announcement stayed on the bulletin board for weeks.

20. Around February 2000 a Ku Klux Klan rally was being advertised. On that occasion a White deputy, Wallace Wyatt, remarked to the Plaintiff that he had a confederate flag tattooed on his body, specifically, on his "d…"

21. On February 14, 2000 Plaintiff emailed Deputy Wyatt and complained about the racist comment. Plaintiff copied Sergeant Terry L. Wilson, a supervisor, on that e-mail as well. However, no remedial action was taken. Rather, Deputy Warren was reputed for his abuse of Black citizens in his custody and was the object of an internal investigation of the Defendant for that reason.

22. Around March 2000 a black gingerbread man doll was put in Plaintiff's personal mail box at the substation. Only Defendant's personnel had access to Plaintiff's mail box.

23. Around March 2000 a banner was displayed across the evidence lockers requesting the Plaintiff to leave the Wallisville substation.

24. A few days prior to Plaintiff's suspension and demotion at the end of March 2000, Plaintiff arrived at the Defendant's Wallisville substation and observed a

Texas and a Confederate flag flying on the substation's flag pole in the parking lot. This was extremely embarrassing and humiliating to the Plaintiff. The flag had been displayed there with the knowledge and awareness of the Defendant.

25. Plaintiff complained to Sergeant Wilson about comments made to him "that were very insulting to say the least. A large banner was taped across the evidence lockers with comments that were very unprofessional. Captain Nixon did address this issue, but I had been dealing with comments that are very inappropriate for some time now." Plaintiff requested an investigation of his concerns of racial harassment and a meeting with Major Sturgis and Chief Deputy McKaskle to address his concerns. Plaintiff's concerns, however, were never addressed and the racism continued unabated.

26. For instance, Deputy Wyatt demeaned the Plaintiff in the presence of citizens, emphasizing that if they needed a "real deputy," they should talk with Wyatt not the Plaintiff.

27. Employees at the substation also nicknamed the Plaintiff "Mary," alluding to the fact that, unlike most deputies, he spent most of his time at the substation doing office work like Mary, the substation's receptionist.

28. Plaintiff frequently complained about the treatment to which he was subjected, but to no avail. To escape the racism he pursued transfers to other districts within the Patrol Bureau and the Detective Bureau. However, he was unable to secure any transfers because of the poor performance evaluations given to him by Lieutenant Warren.

29. Rather than take remedial action Defendant suspended the Plaintiff on March 31, 2000 as indicated above as punishment for having complained of discrimination.

30. Subsequent to these events, on September 27, 2000, Plaintiff timely filed a discrimination charge against the Defendant through the Equal Employment Opportunity

Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR") alleging discrimination based on race and retaliation.

31. On July 24, 2001 the EEOC issued a Determination Letter finding that Defendant had subjected the Plaintiff to a hostile work environment because of his race and that it had retaliated against him because of his opposition to Defendant's discriminatory practices.

32. The EEOC and the U.S. Department of Justice subsequently commenced conciliation efforts with the Defendant, but Defendant refused conciliation.

33. Therefore, on November 30, 2004 the Civil Rights Division of the U.S. Department of Justice issued the Plaintiff a right to sue thereby allowing him to sue the Defendant in court.

34. Plaintiff has filed this action within ninety (90) days of his receipt of the right to sue.

V.

PLAINTIFF'S CLAIM FOR RACE DISCRIMINATION

35. Plaintiff realleges all factual allegations made in the preceding paragraphs and would show that Defendant is liable to him for race discrimination under Title VII of the Civil Rights Act of 1964, as amended. At all times relevant to this lawsuit Plaintiff was, on account of his race, a member of a protected class. Defendant treated Plaintiff less favorably in the terms and conditions of his employment than its similarly situated White employees because of his race, Black.

36. This discrimination is the proximate cause of damages sustained by Plaintiff.

37. Plaintiff further realleges all factual allegations made in the preceding paragraphs and would show that Defendant is also liable to him for race discrimination in that he was compelled to work in a consistently racist and racially hostile work

environment. The harassment was on account of Plaintiff's race, it was pervasive and it altered the terms and conditions of his employment. Defendant was aware of the racially hostile work environment in which Plaintiff worked but took no preventive, prompt, or effective remedial action.

38. The racially hostile work environment in which Plaintiff was compelled to work proximately caused him damages.

39. Plaintiff satisfied all jurisdictional and administrative prerequisites for bringing this cause of action.

VI.

PLAINTIFF'S CLAIM FOR UNLAWFUL RETALIATION

40. Plaintiff further realleges all factual allegations made in the preceding paragraphs and would show that Defendant is further liable to him for unlawful retaliation under Title VII of the Civil Rights Act of 1964, as amended. At all times relevant to this lawsuit Plaintiff was protected from retaliation for having opposed Defendant's racism and the racist conduct of its racist employees. Defendant unlawfully retaliated against the Plaintiff by suspending him, denying him transfers, issuing to him poor performance evaluations, transferring him against his will, and generally adversely altering and impacting the terms and conditions of his employment.

VII.

PLAINTIFF'S JURY REQUEST

41. Plaintiff respectfully requests a trial by jury.

VIII.

DAMAGES

42. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this court grants relief.

IX.

PRAYER FOR RELIEF

43. WHEREFORE, PREMISES CONSIDERED, Plaintiff Lee Bumpers prays that Defendant Harris County, Texas be cited to appear and answer and that on final trial Plaintiff be granted relief as follows:

1. Judgment declaring that the acts and practices described herein violate Title VII of the Civil Rights Act of 1964, as amended;

2. Judgment enjoining and permanently restraining these violations;

3. Judgment directing the Defendant to pay Plaintiff actual, compensatory, and liquidated damages on all counts;

4. Costs of suit and reasonable attorney's fees;

5. Prejudgment and postjudgment interest as provided by law; and

6. Such other and further relief, in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

BY:

Peter Costea
TBN 04855900
One Riverway, Suite 1700
Houston, Texas 77056
Tel. 713/840-6410
Fax 713/622-1937
ATTORNEY FOR PLAINTIFF
LEE BUMPERS

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FEB 2 2 2005
Michael N. Milby, Clerk

## I (a) PLAINTIFFS

Lee Bumpers

## DEFENDANTS

Harris County, Texas

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Harris
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Peter Costea
One Riverway, Suite 1700
Houston, Texas 77056
Tel. 713-840-6410

ATTORNEYS (IF KNOWN)

unknown

H-05-0577

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- XX 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Title VII, Civil Rights Act of 1964, 42 USC Section 200e et seq.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med Malpractice
- ☐ 365 Personal Injury—Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Other

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: X☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

none

JUDGE ____ DOCKET NUMBER ____

DATE February 16, 2005 SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT